KUTTROFF, PICKHARDT & CO. (INC.) *v.* UNITED STATES (*No.* 2444).[1]

CONSTRUCTION, PARAGRAPH 28, TARIFF ACT OF 1922—COAL-TAR DYES—
SPECIFIC DUTY IN ABSENCE OF REGULATIONS.

Paragraph 28, tariff act of 1922, levies on coal-tar colors, dyes, or stains, in addition to an ad valorem duty, a specific duty of 7 cents per pound, to be based on standards of strength to be established by the Secretary of the Treasury. Such merchandise, imported prior to the establishment of such standards, does not, for that reason, escape assessment of the specific duty. The 7 cents per pound is taken as the minimum rate; and the judgment of the Board of United States General Appraisers overruling a protest against its assessment is affirmed.

United States Court of Customs Appeals, January 3, 1925

APPEAL from Board of United States General Appraisers, G. A. 8816 (T. D. 40250)

[Affirmed.]

*Walden & Webster* (*Edward F. Jordan* of counsel) for appellant.
*William W. Hoppin*, Assistant Attorney General (*Charles D. Lawrence*, special attorney, of counsel), for the United States.

---

[1] T. D. 40613.

[Oral argument Nov. 18, 1924, by Mr. Jordan and Mr. Lawrence]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

GRAHAM, Presiding Judge, delivered the opinion of the court:

In this case the importer made four entries, the first being September 27, 1922, and the last February 21, 1923. The material imported was rosamine B, rapid fast brown B in powder, rapid fast blue B in powder, rapid fast red GZ in paste, anthraflavone GC paste, and metachrome olive brown G paste, all of which are stipulated to be coal-tar colors or dyes of a kind provided for in the third proviso of paragraph 28 of the tariff act of 1922. The merchandise was assessed by the collector at 60 per cent ad valorem and 7 cents per pound under said paragraph 28, the specific duty of 7 cents per pound being assessed on the invoice weights. The importer protested in each case and his several protests were duly overruled; whereupon he appealed to the Board of General Appraisers, which overruled the protests and entered judgment for the Government, from which judgment importer appeals.

No testimony was offered, but it was stipulated, in addition to the facts above stated, subject to objection on the part of the Government as to its materiality and relevancy at the time of the assessment of duty, that the Secretary of the Treasury had not established any standard of strength under the third proviso of paragraph 28 prior to the time of importation, and that the appraisers' reports should be received in evidence subject to the objections of counsel for the importer as to the relevancy, materiality, and competency of the portion of said reports, reading, in effect, that return for duty based on comparison with the lowest known commercial strength of the merchandise was made at 60 per cent ad valorem and 7 cents per pound.

The relevant portions of paragraph 28 of the tariff act of 1922 are as follows:

28. Coal-tar products: All colors, dyes, or stains * * * 45 per centum ad valorem based upon the American selling price (as defined in subdivision (f) of section 402, Title IV) of any similar competitive article manufactured or produced in the United States, and 7 cents per pound: *Provided*, That for a period of two years beginning on the day following the passage of this Act the ad valorem rate of duty shall be 60 per centum instead of 45 per centum. * * * *Provided*, That the specific duty of 7 cents per pound herein provided for on colors, dyes, or stains, whether soluble or not in water, color acids, color bases, color lakes, leuco-compounds, indoxyl, and indoxyl compounds, shall be based on standards of strength which shall be established by the Secretary of the Treasury, and that upon all importations of such articles which exceed such standards of strength the specific duty of 7 cents per pound shall be computed on the weight which the article would have if it were diluted to the standard strength, but in no case shall any such articles of whatever strength pay a specific duty of less than 7 cents per pound: * * * *Provided further*, That in the enforcement of the foregoing pro-

visos in this paragraph the Secretary of the Treasury shall adopt a standard of strength for each dye or other article which shall conform as nearly as practicable to the commercial strength in ordinary use in the United States prior to July 1, 1914; that if a dye or other article has been introduced into commercial use since said date then the standard of strength for such dye or other article shall conform as nearly as practicable to the commercial strength in ordinary use; that if a dye or other article was or is ordinarily used in more than one commercial strength, then the lowest commercial strength shall be adopted as the standard of strength for such dye or other article:  *  *  *

Under the stipulation the only question involved in this case is whether the Secretary of the Treasury not having established standards of strength as provided in the third proviso of paragraph 28 prior to the time of importation, the specific duty of 7 cents per pound can be imposed upon the merchandise in question.

The importer claims that the establishment of such standards of strength by the Secretary of the Treasury is a condition precedent to the assessment and collection of such a duty; the Government claims that the specific duty mentioned is a minimum rate of duty and must be assessed in all cases, whether there are any regulations or not.

We are of opinion that the construction argued for by the Government is the proper one. Paragraph 28 plainly provides in its first section that merchandise of the character of the imports in this case shall be dutiable at the rate of 45 per cent ad valorem and 7 cents per pound. Following this in the paragraph are various provisos. The first provides for an ad valorem duty of 60 per cent for the period of two years following the passage of the act, doubtless for the purpose of giving protection to the domestic dye and color industry during its period of establishment. The third proviso, the one in question here, provides that the specific duty of 7 cents per pound shall be based on standards of strength to be established by the Secretary of the Treasury. The sixth proviso is to the effect that these standards of strength shall be based upon the strength of similar articles in ordinary commercial use in the United States prior to July 1, 1914. It was plainly the intent of Congress by this paragraph to protect the domestic dye industry. This could not be fully done by a specific duty on each pound of imported product, unless regard was also had to the degree of strength and concentration of the importation. It is argued that the language "but in no case shall any such articles of whatever strength pay a specific duty of less than 7 cents per pound," in the third proviso, refers only to its immediate antecedent, namely, articles upon which the standards of strength have been fixed. We can not adopt that view. Having in mind that the paragraph had already fixed a specific duty of 7 cents per pound, it is a reasonable view to take that in this last-quoted language Congress intended to state that nothing in the

third proviso contained should be construed as changing the specific duty already provided for in the preceding language of the paragraph, and that in every case, whether standards had been fixed or not and whatever the strength of the material imported, it should pay a specific duty of 7 cents a pound. .

Counsel for appellant rely upon Dunlap v. United States (173 U. S. 65) in support of their proposition that the fixing of standards of strength by the Secretary of the Treasury is a condition precedent to the assessment of the specific duty.

In the case cited Dunlap was using alcohol in the manufacture of hats, and had requested of the collector a refund of an internal-revenue tax theretofore paid by him upon the alcohol so used.  The act of August 28, 1894, section 61, provided that any manufacturer using alcohol in his business might use the same under regulations to be prescribed by the Secretary of the Treasury, and on satisfying the collector of internal revenue in his district that he had complied with such regulations, and on delivering up his internal-revenue stamps, might have a rebate of the internal-revenue tax so paid by him.  Due to the lack of appropriations by Congress, the Secretary of the Treasury had made no such regulations.  The divided court held, affirming the action of the Court of Claims below, that Dunlap could only recover as a result of such regulations and the regulations not having been made, he had no standing in court.  The Dunlap case makes a clear distinction between cases where the statute has clearly vested some right and cases where some right is granted subject to a condition precedent.  The Court of Claims in the same case (33 Ct. Cls. 135), in a well-considered opinion by Weldon, Judge, discusses and cites the two lines of cases bearing on this subject. Among the cases discussing conditions precedent to the establishment of a right are the Five Per Cent Cases (243 U. S. 97), United States v. McLean (95 U. S. 750), and United States v. Verdier (164 U. S. 213).

On the other hand, there is a line of cases holding that where a right has been clearly expressed in the statute and regulations have been required as incidental thereto, the right will be maintained even though the regulations have not been promulgated.  Such is Bartram v. United States (77 Fed. 604), where domestic bags were imported by an exporter and where proof was required to be made in a form to be prescribed by Treasury regulations, no such regulations having been made.  The right to free importation was sustained.

In T. D. 27220 and T. D. 22078, wool and woolen noils were held to be dutiable only as to the correct weight of the material and less an allowance for absorption of moisture, even though the regulations of the Secretary of the Treasury were not complied with, the holding being in both cases that the statute imposed a duty only upon wool, and, such being the fact, the extent of this right was not limited by

a failure to comply with Treasury regulations. A leading case in this line of authorities is Campbell *v.* United States (107 U. S. 407). In this case suit was brought in the Court of Claims for a drawback on account of certain linseed cake made by the importer out of linseed imported from a foreign country, which cake was afterwards exported. The act of Congress in force at the time provided for the payment of a drawback equal in amount to the duty paid on the raw material imported. The exporter complied with the regulations of the Secretary of the Treasury, but the Secretary of the Treasury thereafter notified the collector to refuse payment of the drawback to which the exporter was entitled. The Government contended that the action of the collector in making a certificate was a prerequisite to the right of the exporter to claim a drawback. The court held that the right to the drawback was given by the act of Congress, and that this right could not be defeated by the failure of the Secretary of the Treasury to act.

Paragraph 28, in question here, recently came under observation in T. D. 40196 (G. A. 8800), where in a carefully considered opinion by Brown, General Appraiser, it was held that the specific duty of 7 cents per pound applies in the absence of any Treasury regulations.

Paragraph 28 provides for the imposition of a specific duty of 7 cents per pound on the various materials named in that paragraph. This specific duty is not in any way limited by any subsequent language, but is rather reinforced and reiterated by the language hereinbefore quoted, appearing in the third proviso. In the very nature of things, regulations as to standards of strength of such complex and unusual materials as are named in paragraph 28 require much time and consideration and frequent changes. The industry is in its infancy, and it is common knowledge that great changes and developments are being made in it. Knowing this to be true it is not reasonable to assume that Congress intended that, because the Secretary of the Treasury has not provided instanter regulations fixing standards for all the materials mentioned in paragraph 28, that therefore the specific duty mentioned in said paragraph would not apply to such materials as might not have had standards fixed for them.

The judgment of the Board of General Appraisers is *affirmed.*