UNITED STATES *v.* SANDOZ CHEMICAL WORKS (No. 2645)[1]

1. DUTY, WHEN ACCRUES.

The right to duties accrues when the merchandise is imported, the rate and amount to be determined under the law in force at the time of importation, the quantity being that actually imported. This general rule is subject to the power of Congress to provide by statute clearly intended to operate retrospectively that goods in customs custody shall be subject to such statute.

2. COAL-TAR DYES—SPECIFIC DUTY PRIOR TO REGULATIONS.

Paragraph 28, Tariff Act of 1922, levies, in addition to an ad valorem duty, on coal-tar colors, dyes, or stains, a specific duty of 7 cents per pound, to be based on standards of strength to be established by the Secretary of the Treasury. Such, imported prior to the establishment of such standards, were liable to the specific duty on only the weight imported. See *Kuttroff, Pickhardt & Co.* v. *United States*, 12 Ct. Cust. Appls. 447. Levying on weights ascertained "on comparison with the lowest known commercial strength of the merchandise" was illegal.

United States Court of Customs Appeals, April 17, 1926

APPEAL from Board of United States General Appraisers, Abstract 49444

[Affirmed.]

*William W. Hoppin* and *Charles D. Lawrence*, Assistant Attorneys General, for the United States.
*Allan R. Brown* for appellee.

[Oral argument December 15, 1925, by Mr. Lawrence and Mr. Brown]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

BARBER, Judge, delivered the opinion of the court:

This is an appeal by the Government from a judgment of the Board of General Appraisers sustaining the importer's protest on a consumption entry.

The only question is whether certain imported coal-tar dyes, dutiable under paragraph 28 of the Tariff Act of 1922, shall pay the specific duty of 7 cents per pound upon the number of pounds

---

[1] T. D. 41542.

actually imported or upon a greater weight ascertained in the manner hereinafter described.

The paragraph provides that the dyes in question shall pay a specific duty of 7 cents per pound.

*Provided*, That the specific duty of 7 cents per pound herein provided for * * * shall be based on standards of strength which shall be established by the Secretary of the Treasury, and that upon all importations of such articles which exceed such standards of strength the specific duty of 7 cents per pound shall be computed on the weight which the article would have if it were diluted to the standard strength, but in no case shall any such articles of whatever strength pay a specific duty of less than 7 cents per pound: * * * *Provided further*, That in the enforcement of the foregoing provisos in this paragraph the Secretary of the Treasury shall adopt a standard of strength for each dye or other article which shall conform as nearly as practicable to the commercial strength in ordinary use in the United States prior to July 1, 1914; that if a dye or other article has been introduced into commercial use since said date then the standard of strength for such dye or other article shall conform as nearly as practicable to the commercial strength in ordinary use; that if a dye or other article was or is ordinarily used in more than one commercial strength, then the lowest commercial strength shall be adopted as the standard of strength for such dye or other article: * * *

The Secretary of the Treasury first established standards of strength as provided in the above paragraph August 14, 1923, T. D. 39765. These were superseded by others May 17, 1924, T. D. 40192.

Certain of the entries covered by the protests in this case were, the Government concedes, made and liquidated prior to the date when such standards of strength were first established. Pursuant to the Government's suggestion that they are not involved in this appeal, we dismiss them from consideration.

All the remaining entries were made prior to August 14, 1923, and all were liquidated after that date but prior to May 17, 1924. Some were appraised prior to August 14, 1923, and others were appraised after that date.

The Government contends that the dyes covered by these appeals or their counterparts were listed under the standards of strength first established by the Secretary of the Treasury and that in determining the dutiable weight thereof it was lawful to employ such standards.

Importer contends that such standards do not cover or relate to the dyes here, but in view of the conclusion hereinafter reached we find it unnecessary to consider these differing views.

The primary question to be considered is whether the standards first established by the Secretary are applicable to importations theretofore made? We think that question must be answered in the negative.

The general rule, established by numerous authorities, is that the right to duties on imported merchandise accrues to the Government and the obligation to pay the same to the importer, at the moment the merchandise is imported, the rate and amount thereof to be duly determined under the law in force at the time of importation, the quantity or weight of such merchandise upon which duty can be taken being that actually imported. *Lawder* v. *Stone*, 187 U. S. 281; *United States* v. *Shallus*, 2 Ct. Cust. Appls. 332, and cases cited. See also *Downing & Co.* v. *United States*, 11 Ct. Cust. Appls. 310.

This general rule is subject to the proviso that Congress may declare, by a subsequent statute designed to operate retrospectively, that merchandise which has been imported but is in customs custody at the time such statute becomes operative, shall be subjected to the duties imposed thereby, whenever such statute clearly shows that intent. *Diana* v. *United States*, 12 Ct. Cust. Appls. 290, and cases cited.

In *Kuttroff, Pickhardt & Co.* v. *United States*, 12 Ct. Cust. Appls. 447, it was contended by importers that the specific duty of 7 cents per pound could not be imposed on dyes covered by paragraph 28 because, at the time of their importation, the standards of strength had not been established by the Secretary of the Treasury. This contention was denied.

Paragraph 28 provides that dyes dutiable thereunder shall pay the specific duty of 7 cents per pound which, if the imported dyes are of a strength greater than the standards established therefor by the Secretary, shall be computed on the weight the dyes would have if diluted to standard strength and that in the enforcement of that provision the Secretary of the Treasury shall establish standards of strength. There is no suggestion in the paragraph that until such standards are established, such duty may be taken on other than the actual weight.

The law is well settled that, in the absence of a statute providing otherwise, duties which are based upon the weight of imported merchandise must be taken upon the true weight thereof. *Downing & Co.* v. *United States*, 11 Ct. Cust. Appls. 310, T. D. 38128, and cases cited.

The standards of strength, when established, were designed to become a part of the law, but, until established as provided in paragraph 28, customs officers had no authority to take duty upon other than the true weight of the dyes in this case. The standards established subsequently to their importation were not applicable thereto. *United States* v. *Mercadante*, 72 Fed. 46; *Bartram* v. *United States*, 77 Fed. 604.

The case here is similar in principle to *Dunlap* v. *United States*, 173 U. S. 65. There, Congress had, in substance, provided that a manufacturer might use alcohol under regulations to be prescribed

by the Secretary of the Treasury, and that on satisfying the collector that alcohol had been used in compliance with such regulations, the manufacturer using the same should be entitled to receive a rebate or repayment of the tax paid thereon.

The Secretary of the Treasury failed to make the regulations and the court held that under that state of facts no rebate could be recovered for alcohol used.

There is, however, another sufficient reason why the Government's contention must be denied.

The collector's return as to these protests states that the weight on which duty was taken—

was determined by a computation made on the basis of the weight as found by the United States weigher or appraiser multiplied by the commercial strength of the merchandise as reported by the appraiser.

And the appraiser states that in making his return for duty, he based the same—

on comparison with the lowest known commercial strength of the merchandise.

In addition to this, it appears that the record in T. D. 40196, G. A. 8800, was incorporated in the record here although it is not a part of the printed record and has not been submitted to us.

The Government, however, in its brief concedes that in that case the testimony showed that the standard of strength employed was the result of information obtained by the appraiser's office from the trade and was not the standard established by the Secretary of the Treasury.

It appears, therefore, that in the instant case neither the appraiser nor the collector actually employed any standards of strength established by the Secretary of the Treasury in ascertaining the weight of the importation upon the basis of which the specific duty was assessed.

Tested by the Government's own theory this was error because it correctly contends that the only standards of strength which can be used to increase the actual imported weight of the merchandise for the purposes of assessing the specific duty are those established by the Secretary. Therefore, the use of a commercial strength or standard ascertained by the appraiser was unlawful.

The judgment of the Board of General Appraisers is *affirmed*.