Rudolph MILES
v.
UNITED STATES.
C.D. 3589; Protest No. 66/70474–5469.

United States Customs Court,
Third Division.
Oct. 14, 1968.

Peticolas, Luscombe & Stephens, El Paso, Tex. (Mark F. Howell, El Paso, Tex., of counsel), for plaintiff.

Edwin L. Weisl, Jr., Asst. Atty. Gen. (Andrew P. Vance and Dominick M. Minerva, New York City, trial attorneys), for defendant.

Before RICHARDSON and LANDIS, Judges.

LANDIS, Judge:

This protest covers 23 entries of copper scrap entered for consumption after February 8, 1966. The district director at El Paso, Tex., liquidated the entries on March 7, 1966, March 31, 1966, and April 25, 1966. He assessed duty at 1.7 cents per pound on 99.6 percent of cooper content under the *eo nomine* provision in TSUS item 612.10 for copper waste and scrap.

TSUS item 612.10 is part of "Schedule 6, Subpart C—Copper" which footnotes a reference to the fact that "Copper waste and scrap and certain copper articles are the subject of temporary legislation" in part 1–B of the appendix to the tariff schedules. Part 1, subpart B, TSUS appendix, titled "Temporary Provisions Amending the Tariff Schedules" contains a general provision for free entry of metal waste and scrap and unwrought metal meeting certain specifications. It continues, however, in appendix TSUS item 911.10, to classify copper waste and scrap as dutiable at 1.7 cents per pound on 99.6 percent of copper content. Although TSUS item 612.10 and appendix TSUS item 911.10 classify copper waste and scrap at no change in the duty rate assessed by the district director, it appears, and the parties seem to agree, that at the time of importation in 1966, appendix TSUS item 911.10 was the more properly controlling item classification for copper scrap. Public Law 89–61, 79 Stat. 207. We note this distinction for clarity of the protest claim we shall now discuss.

Plaintiff did not protest the liquidated rate of duty which, at the time of liquidation in March and April 1966, was correct. It does not now, in protest filed August 23, 1966, protest the classification under TSUS item 612.10 or, more properly, appendix TSUS item 911.10. What plaintiff protests is the decision of the El Paso district director refusing to reliquidate the March and April 1966 liquidated entries under new legislation, approved June 23, 1966, amending appen-

dix TSUS item 911.10 to provide for free entry of copper waste and scrap *"entered, or withdrawn from warehouse, for consumption after February·8, 1966."* Public Law 89–468, 80 Stat. 218. Emphasis added.)

The case is before us for decision on facts stipulated and read into the record at a trial term of court in El Paso, as follows:

1. That the merchandise which is the subject of this protest is copper scrap exported from Mexico, and entered for consumption between February 9, 1966, and April 18, 1966.

2. That said entries were liquidated between 3–7–66 and 4–25–66.

3. That on July 11, 1966, plaintiff requested reliquidation of the subject entries and others on the ground that Public Law 89–468 was applicable.

4. That on July 15, 1966, the District Director at El Paso denied the reliquidation as to the entries which are the subject of this protest on the ground that the liquidations had become final.

5. That the letter of denial be admitted into evidence as Joint Exhibit 1–A.

JUDGE WATSON: Admitted into evidence as Joint Exhibit 1–A, without objection.

\* \* \* \* \* \*

\* \* \* 6. That the official papers be received into evidence without being marked.

7. That plaintiff claims that the copper scrap liquidated prior to the enactment of Public Law 89–468 should have been reliquidated by the District Director as duty free.

8. That defendant asserts that this protest is untimely since the liquidations became final prior to receipt of the requests to reliquidate.

\* \* \* \* \* \*

Both sides have filed briefs. Defendant, taking off on the position it stated on the record, urges that the protest, filed more than 60 days after liquidation, is untimely under section 514 of the Tariff Act of 1930. 19 U.S.C., section 1514. It laces that argument with the contention that Public Law 89–468 may not be retroactively applied to entry liquidations which became final and conclusive under section 514 in the absence of a protest. The district director received the protest on August 23, 1966. That date is obviously more than 60 days after the liquidations in March and April 1966. There are several questions: Is Public Law 89–468 retroactive as to liquidated entries final and conclusive under section 514 (defendant concedes it is retroactive to liquidations open to protest under section 514); did plaintiff have a protestable cause of action under section 514; did it timely protest that cause and did the district director have a duty to reliquidate the liquidated entries under Public Law 89–468, and refund the duties assessed? For the reasons hereinafter stated, we hold for plaintiff.

▮ There is no provision of law which limits the time when an entry must be liquidated. Dart Export Corp., et al. v. United States, 43 CCPA 64, C. A.D. 610. It follows that the date an entry is liquidated is quite beyond the control of a prospective complainant. United States (American Sponge & Chamois Co., Inc., Party in Interest) v. Nylonge Corporation, 48 CCPA 55, 59, C.A.D. 764. The liquidations in March and April 1966 in this case were as a matter of fact and law correct as to the assessed duty rate in force at the times of liquidation. Plaintiff had no cause to complain. It did not protest. The time to protest the March 1966 liquidations expired, and approximately two days remained to protest the April 25, 1966, liquidations when Public Law 89–468 was approved on June 23, 1966. While the rate and amount of duty assessed in liquidation is determined by the law in force at the time of importation, it is subject to the proviso that Congress may declare by subsequent statute designed to operate retroactively, that merchandise shall be subject to the

duties imposed by it, whenever the statute clearly shows that intent. United States v. Sandoz Chemical Works, 14 Ct.Cust.Appls. 21, 23, T.D. 41542. Such other provision of law may necessitate that an entry be reliquidated. Cf. United States v. F. B. Vandegrift & Co., 17 CCPA 127, 132, T.D. 43455.

 Public Law 89–468, in our opinion, clearly expresses a retroactive intent. Cf. Eurasia Import Co., Inc. v. United States, 31 CCPA 202, C.A.D. 273. The district director in fact treated Public Law 89–468 retroactively in reliquidating such liquidated entries as he felt came within the section 514 reach of plaintiff's letter of July 11, 1966, requesting reliquidations. (Exhibit 1–A) Defendant's reference to other public laws Congress made applicable "notwithstanding the provisions of section 514 of the Tariff Act of 1930 or any other provision of law" (defendant's brief, page 5) merely tells us that when brought to its attention Congress took special care to clear the legislation in terms of liquidated entries and section 514. Defendant does not cite, nor do we find, a bit of legislative history of what Congress intended with respect to liquidated entries under section 514 vis-a-vis Public Law 89–468. "It is not for us then to try to avoid the conclusion that Congress did not mean what it said," Unexcelled Chemical Corp. v. United States, 345 U.S. 59, 64, 73 S.Ct. 580, 583, 97 L.Ed. 821, namely, that copper waste and scrap entered, or withdrawn from warehouse, for consumption after February 8, 1966, should be liquidated free of duty. Liquidations, final and conclusive under section 514, do not bar protestable section 514 rights asserted under other provisions of laws. 19 U. S.C., section 1520. Nor do we conceive it beyond the power of Congress to create a protestable right on matters settled in liquidation.

 A cause of action is created when there is a breach of duty owed plaintiff. Unexcelled Chemical Corp. v. United .States, supra; United States ex rel. Lou-

isville Cement Company v. Interstate Commerce Commission, 246 U.S. 638, 38 S.Ct. 408, 62 L.Ed. 914. The right to protest under section 514 is stated as follows:

### § 1514. *Protest against collector's decisions*

Except as provided in subdivision (b) of section 1516 of this title (relating to protests by American manufacturers, producers, and wholesalers), all decisions of the collector, including the legality of all orders and findings entering into the same, as to the rate and amount of duties chargeable, and as to all exactions of whatever character (within the jurisdiction of the Secretary of the Treasury), and his decisions excluding any merchandise from entry or delivery, under any provision of the customs laws, and his liquidation or reliquidation of any entry, or refusal to pay any claim for drawback, or his refusal to reliquidate any entry for a clerical error discovered within one year after the date of entry, or within sixty days after liquidation or reliquidation when such liquidation or reliquidation is made more than ten months after the date of entry, shall, upon the expiration of sixty days after the date of such liquidation, reliquidation, decision, or refusal, be final and conclusive upon all persons (including the United States and any officer thereof), unless the importer, consignee, or agent of the person paying such charge or exaction, or filing such claim for drawback, or seeking such entry or delivery, shall, within sixty days after, but not before such liquidation, reliquidation, decision, or refusal, as the case may be, as well in cases of merchandise entered in bond as for consumption, file a protest in writing with the collector setting forth distinctly and specifically, and in respect to each entry, payment, claim, decision, or refusal, the reasons for the objection thereto. The reliquidation of an entry shall not open such entry so that

a protest may be filed against the decision of the collector upon any question not involved in such reliquidation. June 17, 1930, c. 497, Title IV, § 514, 46 Stat. 734. [19 U.S.C. section 1514.]

Defendant's emphasis on the 60-day limitation to protest liquidations merely masks the several kinds of decisions against which a protest can be filed under section 514. Corrigan v. United States, 35 CCPA 10, C.A.D. 364 (protest of decision refusing to repay additional duties); Guy B. Barham Co., etc. v. United States, 35 CCPA 138, C.A.D. 385 (protest against decision in reliquidation); United States v. V. P. Roberts & Co., 34 CCPA 135, C.A.D. 356 (transferee's protest filed more than 60 days after liquidation held timely); Eurasia Import Co., Inc. v. United States, 31 CCPA 202, C.A.D. 273 (protest of decision refusing refund); United States v. F. B. Vandegrift & Co., 17 CCPA 127, T.D. 43455 (protest of refusal to reliquidate); Shell Oil Co. v. United States, 54 Cust.Ct. 387, Abstract 69233 (protest of refusal to reliquidate for clerical error). As this court said in E. Fucini & Co., Inc. v. United States, 4 Cust.Ct. 174, 178, C.D. 317, "the time limitation for beginning suit * * * [under section 514] is not to be applied artificially."

Public Law 89-468 was approved on June 23, 1966. On July 11, 1966, plaintiff requested the district director at El Paso to reliquidate the March and April 1966 entry liquidations free of duty pursuant to Public Law 89-468. By letter dated July 15, 1966 the district director refused to reliquidate. On August 23, 1966, within 60 days of the district director's refusal, plaintiff protested. On authority of the judicial decisions cited, supra, the protest states a cause of action and is timely under section 514. While plaintiff did not articulate the section of law under which the district director should reliquidate, other than Public Law 89-468, the protest follows the procedure of request, refusal, and protest of a refusal to reliquidate under section 520 of the Tariff Act of 1930, as amended. 19 U.S.C., section 1520. Berkery, Inc. and Daniel F. Young, Inc. v. United States, 47 Cust.Ct. 102, C.D. 2287. It was unnecessary for plaintiff to mention that section by number in order to call the attention of the district director to its provisions. Kilburn Mill v. United States, 26 CCPA 54, T.D. 49598; American Mail Line, Ltd. v. United States, 34 CCPA 1, C.A.D. 335. Defendant rules out reliquidation under section 520, again, under the mask that it is limited to clerical error and is "obviously" inapplicable. (Defendant's brief, footnote page 6.) Section 520, as amended, provides in relevant part as follows:

(c) Notwithstanding a valid protest was not filed, the Secretary of the Treasury may authorize a collector to reliquidate an entry to correct—

(1) a clerical error, mistake of fact, or other inadvertence not amounting to an error in the construction of a law, adverse to the importer and manifest from the record or established by documentary evidence, in any entry, liquidation, appraisement, or other customs transaction, when the error, mistake, or inadvertence is brought to the attention of the customs service within one year after the date of entry, appraisement, or transaction, or within sixty days after liquidation or exaction when the liquidation or exaction is made more than ten months after the date of the entry, appraisement, or transaction * *.

Section 520, a remedial statute, responds to the facts here. The district director should have acted under it. He did not clerically err when he liquidated and assessed duties on these 1966 copper scrap entries in March and April 1966. His assessment was not discretionary and did not invoke a construction of law. Esso Standard Oil Company v. United States, 30 Cust.Ct. 111, C.D. 1506. What the district director did in liquidation was an inadvertence and mistake, since by Public Law 89-468 copper waste and scrap entered after February

8, 1966, was entitled to be entered free of duty. Plaintiff brought the mistake and inadvertence to the attention of the district director within one year after the date of entry. On this record, the district director did not even ask for authority to reliquidate under section 520. "We perceive no reason why it is not the function of the * * * [district director], if satisfied he has made a mistake * * * against the Government or against the importer, to correct same." United States v. Godchaux Sugars, Inc., 11 Ct.Cust.Appls. 529, 536, T.D. 39678. Plaintiff did not sleep on its rights. Imported merchandise should be liquidated with an even hand to the extent it is legally possible to do so. United States v. Godchaux Sugars, Inc., supra.

The facts here are not unlike the facts in Esso Standard Oil Company v. United States, supra. There an entry of fuel oil from the Netherlands West Indies, entered on March 12, 1951, was liquidated on May 15, 1951, at the assessed rate of ½ cent per gallon under the Internal Revenue Code. On the basis of the information available at the time of liquidation, ½ per cent was the proper rate. On August 16, 1951, the Bureau of Customs communicated to the collector that because quotas on fuel oil were filled on March 16, 1951, entries or withdrawals of fuel oil during the period from January 1, 1951, through March 15, 1951, were dutiable at the rate of ¼ cent per gallon. Esso's request to reliquidate was denied on December 10, 1951. It timely protested. The third division of this court sustained the protest.

This protest is sustained. Judgment will enter accordingly.