(C.D. 2509)

SHELL OIL Co. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided February 1, 1965)

*Sharretts, Paley & Carter* (*Eugene F. Blauvelt, Charles F. Appel,* and *M. Barry Levy* of counsel) for the plaintiff.

*John W. Douglas,* Assistant Attorney General (*Murray Sklaroff* and *Charles P. Deem,* trial attorneys), for the defendant.

Before DONLON and RICHARDSON, Judges

RICHARDSON, Judge: The merchandise at bar consists of asphalt of petroleum and residual fuel oil which were exported from Curacao, Netherlands West Indies, and entered at Boston, Mass. The merchandise was classified under the provisions of 19 U.S.C.A., section

1201, paragraphs 1710 and 1733 (paragraphs 1710 and 1733, Tariff Act of 1930, as amended), and the fuel oil was assessed with duty at the rate of one-half cent per gallon under the provisions of 26 U.S.C.A., sections 3420 and 3422 (sections 3420 and 3422, Internal Revenue Code of 1939).

The instant protest was filed against the collector's refusal to cancel his liquidation as requested by the importer, and liquidate the subject entry in accordance with requirements of the tariff act. It is claimed that by reason of clerical error the involved entry was liquidated prematurely. The protest was submitted to the court for decision upon a stipulation which reads as follows:

IT IS HEREBY STIPULATED AND AGREED between the parties hereto, that the above enumerated protest involves an importation of fuel oil derived from petroleum, the product of the Kingdom of the Netherlands (including its overseas territories) entered for consumption at the Port of Boston, Mass., on May 4th, 1951.

IT IS FURTHER AGREED that it was the practice of the Collector of Customs at the Port of Boston, Mass., to assess Internal Revenue tax on such imports in accordance with the provisions of the Venezuelan Trade Agreement reported in T.D. 50015, the quota amounts published in T.D. 52684, and the Bureau of Customs letter dated March 1st, 1951, a true and correct copy of which is marked "Exhibit 1" and attached to this stipulation.

IT IS FURTHER STIPULATED that it was the practice of the Collector to withhold liquidations of entries such as that covered by this protest until receipt of notice from the Bureau of Customs telling him of the date upon which the quota amount allocated to the Kingdom of the Netherlands had been filled.

IT IS FURTHER STIPULATED that the Collector was not notified of said date until he received Bureau of Customs letter dated August 16th, 1951 from which he learned that said date was March 16th, 1961 [sic]. A true and correct copy of Bureau of Customs letter dated August 16th, 1951 is attached hereto and marked "Exhibit 2".

IT IS FURTHER STIPULATED that the entry covered by the instant protest was posted for liquidation, inadvertently by a clerk in the Collector's office, on July 19th, 1951, prior to receipt of Bureau of Customs letter marked "Exhibit 2".

IT IS FURTHER STIPULATED that the invoice and all other papers included in the protest file, subject to the order of the Court, may be received in evidence and that copies of documents marked Exhibits 1 and 2 attached to this stipulation may be marked in evidence as Exhibits 1 and 2 respectively.

IT IS FURTHER STIPULATED that the Collector would have assessed the same rate and amount of Internal Revenue tax as was assessed in the liquidation of July 19th, 1951 had liquidation been withheld until after August 16th, 1951.

The protest is limited to the claim that such entry should be reliquidated by reason of the discovery of a clerical error within one year of the date of entry and is submitted upon this stipulation.

Plaintiff's exhibit 1 is a letter, dated March 1, 1951, from the Bureau of Customs to all Collectors of Customs directing that the deposit of

estimated duties on quota petroleum and petroleum products from the Kingdom of the Netherlands (including its overseas territories) be made at the rate of ½ cent per gallon on and after March 5, 1951, and stating that the quota status for duty purposes of all entries and withdrawals accepted on and after March 5 will be determined as soon as possible after receipt of complete reports from collectors and comptrollers of customs. Plaintiff's exhibit 2 is a letter, dated August 16, 1951, from the Bureau of Customs to the Collector of Customs at Boston, file 343.3, stating that the 1951 quota on petroleum and petroleum products allocated to the Kingdom of the Netherlands (including its overseas territories) was filled on March 16, 1951, and that all entries and withdrawals for consumption accepted during the period January 1 through March 15 are dutiable at the modified rate of ¼ cent per gallon.

The question before the court is whether liquidation of the subject entry under the circumstances of record before ascertainment of the date of exhaustion of the tariff-rate quota affecting merchandise covered by such entry constitutes actionable "clerical error" within the meaning of 19 U.S.C., 1946 edition, section 1520(c)(1) (section 520(c)(1), Tariff Act of 1930, as amended by the Customs Administrative Act of 1938). Plaintiff maintains that such error exists, while defendant contends that such error does not exist. In this connection, it should be noted that the defendant's counsel calls our attention, in his brief at page 2, to section 520(a)(3) of the Tariff Act of 1930 as being the applicable statute here involved. Although section 520(a)(3) deals with clerical error in language which remained substantially unchanged as of the time of the subject importation, nevertheless, section 520(a)(3) was amended by Congress in the Customs Administrative Act of 1938 to become section 520(c)(1) of the act. It is section 520(c)(1) with which we are concerned, and not section 520(a)(3) which was superseded. Section 520(c)(1) reads as follows:

(c) Notwithstanding a valid protest was not filed, the Secretary of the Treasury may authorize a collector to reliquidate an entry to correct—

(1) A clerical error in any entry or liquidation discovered within one year after the date of entry, or within sixty days after liquidation when liquidation is made more than ten months after the date of entry; . . . .

There is no question but that the error complained of herein was discovered within 1 year of the making of the subject entry, and that the instant protest, complaining of such error, among other things, was filed within the statutory period prescribed by 19 U.S.C.A., section 1514 (section 514, Tariff Act of 1930), following the collector's refusal to rectify the error upon plaintiff's demand. However, at the outset, we are obliged to consider the objection advanced by the de-

fendant that the protest does not set forth a legally sufficient claim of clerical error.

Defendant argues that the protest does not apprise the collector of the real substance of the claim in that it does not contain distinct and specific reasons for plaintiff's objection to the collector's refusal to accede to its demand. Accordingly, defendant urges us to dismiss the protest. The pertinent portion of the protest, dated May 7, 1952, reads as follows:

Notice of dissatisfaction is hereby given with and protest is hereby made against your decision of April 24, 1952 refusing to reliquidate the entry below described.

We claim that there was a clerical error within the meaning of section 520(c) (1) of the Tariff Act of 1930 as amended, which was discovered within one year of the date of entry and that you should reliquidate this entry in accordance with our demand of April 2, 1952.

| * | * | * | * | * | * | * |

| Entry No. | Entered | Vessel | Liquidated |
|---|---|---|---|
| F-69_____ | 5-4-51_____ | Paludina_____ | 7-19-51   I<br>Date of Refusal<br>4-24-52 |

We think the objection to the sufficiency of the protest comes too late. An objection of this nature must be seasonably made. Defendant's participation with plaintiff in a stipulation of facts and subsequent submission of the case for disposition on the merits constitutes an implied waiver of any defects in the protest, and is, in effect, a consent that the case be decided on the merits. *Langfelder, Homma & Hayward, Inc.* v. *United States*, 2 Cust. Ct. 525, Abstract 40344.

Apart from the question of waiver, we think the protest is legally sufficient. A protest need not be made with technical precision. It is sufficient if the importer indicates distinctly and definitely the source of his complaint and his design to make it the foundation for a claim against the Government. *Greeley's Administrator* v. *Burgess (Converse* v. *Burgess)*, 59 U.S. 413. If it fairly and accurately apprises the collector of the objection which is raised against his action, so that he may have an opportunity to reconsider, a protest is legally sufficient. *Arthur* v. *Morgan*, 112 U.S. 495. The instant protest assigns as the reason for the importer's grievance the collector's refusal to reliquidate the subject entry for clerical error, as demanded by the importer, giving both the date of the collector's refusal and the date of the demand. Details of the nature of the alleged clerical error are not set forth in the above-noted portion of the protest. However,

the details are set forth in the written demand previously given to the collector under date of April 2, 1952, and incorporated in the protest by reference. This demand is part of the official papers which were received in evidence pursuant to the stipulation. The pertinent part of the demand reads as follows:

Sir:

We refer to the following entry:

| | |
|---|---|
| Entry No.: | F-69 |
| In the name of: | Shell Oil Co. |
| Date of Entry: | May 4, 1951 |
| Vessel: | Paludina |
| Liquidated: | July 19, 1951 Increase |

It appears that by reason of a clerical error, this entry was inadvertently liquidated prior to receipt of the letter dated August 16th from the Bureau of Customs, file 343.3. The merchandise consists of fuel oil imported from Curacao, N.W.I. and it was clearly the intent of the Bureau of Customs as expressed in its instructions issued in Circular Letter No. 2732 dated March 1, 1951, file 343.3, that you should not liquidate an entry such as this until you received instructions from the Bureau.

\* \* \* \* \* \* \*

We respectfully request that you cancel your liquidation of July 19, 1951 and that you liquidate this entry in accordance with the requirements of the Tariff Act.

Please advise us of your decision.

The demand clearly shows that the basis of the importer's claim of clerical error is the premature liquidation of the entry.

The rule with respect to the sufficiency of a protest which refers to a document outside of its text has been stated by the Supreme Court in *Schell's Executors* v. *Fauché*, 138 U.S. 562, where the Court said, at page 567:

\* \* \* If, however, the papers are not connected together in fact, they are not considered as connected in law, unless, at least, the paper signed refers in some way to the other, which may then be construed as forming a part of it. *Hinde* v. *Whitehouse* (7 East, 558); *Kenworthy* v. *Schofield* (2 B. & C., 945). The proper test is, whether a person reading these papers would be deceived or misled as to the actual intention of the writer.

This test was earlier applied by the United States Circuit Court for the Southern District of New York in the case of *Smith* v. *Schell*, 27 Fed. 648. In the *Smith* case, the court held that a protest referring for the grounds of its claim to a circular issued by the Treasury Department was to be read together with the protest, and being thus made definite was, therefore, sufficient. Applying the test laid down by the Supreme Court in *Schell's Executors* v. *Fauché, supra*, it is clear that the protest recitals in the instant case were sufficient to enable the collector to understand the nature and extent of the claim of clerical error when read together with the letter of April 2, 1952. And one of the controlling considerations which leads to such conclusion is the fact that both documents were addressed to the collector.

Indeed, the collector's refusal to reliquidate the entry as demanded is an indication that he knew the nature of the claim, was not misled by it, and acted in response to it, taking the position upon the advice of the Customs Bureau that the premature liquidation was not the result of clerical error. This, of course, preceded the advent of the protest. But, because of it, the terse reference in the protest to the importer's demand which the collector had rejected could come as no surprise to the collector regarding the intendment of the importer's claim of clerical error. Consequently, we find no reason to regard the protest as being technically insufficient.

Turning to the merits of the case, our attention has been called to the case of *Esso Standard Oil Company* v. *United States*, 30 Cust. Ct. 111, C.D. 1506, wherein the question now before us was there raised. The merchandise in that case consisted of fuel oil and gas enrichment fuel oil, imported at Charleston, S.C., on March 12, 1951, from the Netherlands West Indies under the same quota-rate restrictions which governed the importations at bar, and the same administrative procedures relative to the deposit of estimated duties, ascertainment of the date of fulfillment of the quota allocated to certain products of the Kingdom of the Netherlands, including its overseas territories, under the terms of the trade agreement with Venezuela (T.D. 50015), and the interim suspension of liquidation of entries covering these products. And, as in the case at bar, liquidation of the entry in the *Esso Standard Oil Company* case was made prematurely on May 15, 1951, on the basis of the deposit of estimated duties at the rate of $\frac{1}{2}$ cent per gallon. The importer filed a protest in that case on a number of grounds, including in such protest a claim of clerical error by reason of the premature liquidation, asking that the entry be reliquidated at the lower duty rate of $\frac{1}{4}$ cent per gallon as provided for in the trade agreement.

Testimony was adduced at the trial, in the *Esso Standard Oil Company* case, from the entry officer and the liquidation officer at the port of entry. From the testimony, it appeared that the Bureau's instructions relating to quota-status entries were received at the port, but does not appear to have been distributed to or received by the liquidation officer, who liquidated the entry as it developed, prematurely, under the belief that he had all the relevant information before him necessary to effect a valid liquidation, and proceeded accordingly. The liquidation officer stated, in the light of what he learned later, that the liquidation was a *mistake*, and that he would not have so liquidated the entry at the higher duty rate of $\frac{1}{2}$ cent per gallon had he known of the Bureau's instructions. Such a premature liquidation had been described by the Bureau as *an inadvertent liquidation* in a letter to the importer's counsel. The court there concluded that the premature liquidation constituted clerical error and ordered a reliquidation of

the entry on the basis of the reduced duty rate. The court stated, at pages 115–116:

. . . we find that the error of the liquidator, a subordinate of the collector, acting in a clerical capacity, upon whom no duty devolved to exercise original thought or judgment in determining the rate applicable to quota merchandise, or in determining which entries should be withheld from liquidation or what period of time should be allowed to elapse in order to obtain information as to the filling of the quota of such merchandise, constituted a "clerical error," discovered within 1 year after the date of entry and on account of which clerical error demand was duly made upon the collector for reliquidation of the entry.

*Esso Standard Oil Company* v. *United States, supra,* is distinguishable on the facts from the instant case. In the cited case, the premature liquidation involved an incorrect assessment of duty, and, in the instant case, there was no error in the assessment of duty. The assessment is exactly the same as it would have been had liquidation taken place at a later date, so should the court decide the case in favor of the plaintiff, it would be impossible to grant the plaintiff any effectual relief whatever. The court "is not empowered to decide moot questions or abstract propositions, or to declare, for the government of future cases, principles or rules of law which cannot affect the result as to the thing in issue in the case before it." *California* v. *San Pablo & Tulare Railroad Co.,* 149 U.S. 308, 314. See also: *Southwestern Sugar & Molasses Co., Inc.* v. *United States,* 21 Cust. Ct. 8, C.D. 1117.

For the foregoing reasons, the protest is dismissed.

Judgment will be rendered accordingly.